UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAYK HARUTYUNYAN,<br><br>        Petitioner,<br>v.<br><br>LILIT SARGSYAN,<br><br>        Respondent. | Civil Case No.: 1:20-CV-10650-IT |

## RESPONDENT'S OPPOSITION TO PETITONER'S MOTION TO RECONSIDER AND RESPONDENT'S REQUEST FOR SANCTIONS AND ATTORNEYS' FEES

The Respondent, Lilit Sargsyan ("Mother") submits this opposition to the Petitioner's "Motion to Reconsider." In this opposition, the Mother argues that the Court's findings of fact and rulings of law are well supported by the evidence at trial and that the motion to reconsider should be denied. The Mother further argues that the motion was brought in bad faith, in clear violation of the ten day limitation on such motions contained in Rule 59 (e) of the Federal Rules of Civil Procedure and that the motion is in furtherance of the Petitioner's litigation scheme to weaponize the Hague Convention in order to harass the Mother and gain an advantage in the divorce action pending in the Republic of Armenia. The Mother further requests that the Court order sanctions and attorneys' fees against the Petitioner and his counsel for bringing the motion, and for pursuing frivolous litigation in bad faith.

1

# ARGUMENT

**1. Petitioner's "Motion to Reconsider" Fails to Meet the Standards Under Rule 59 (e):**

Petitioner's loosely entitled "Motion to Reconsider" fails to cite any legal authority as a basis for the motion. There is no provision in the Federal Rules of Civil Procedure for a "motion to reconsider." <u>U.S. v. $23,000 in U.S. Currency,</u> 356 F.3d 157, 165 n.9 (1st Cir. 2004); <u>Association for Retarded Citizens of Connecticut, Inc. v. Thorne,</u> 68 F.3d 547, 553 (2d Cir. 1995) "Motions to reconsider" are therefore treated as motions to modify, amend or vacate a judgment under Federal Rule of Civil Procedure 59 (e). <u>Villanueva-Mendez v. Nieves Vazquez,</u> 360 F. Supp. 2d 320 (D.P.R. 2005), aff'd, 440 F.3d 11 (1st Cir. 2006); <u>Anderson v. Holy See,</u> 934 F. Supp. 2d 954 (N.D. Ill. 2013), aff'd on other grounds, 759 F.3d 645 (7th Cir. 2014).

**2. Petitioner's Motion Violates the Ten-Day Requirement of Rule 59 (e) and is a Nullity:**

Under Rule 59 (e), motions for reconsideration must be filed within ten days of judgement. Otherwise, an untimely motion for reconsideration is a nullity. <u>Morris v. Unum Life Ins. Co. Of America</u>, 430 F.3d 500, 63 (1st Cir. 2005). Rule 59 (e) unequivocally requires that the Petitioner's motion to reconsider be brought within ten days of the entry of judgement. <u>Sierra Club v. Tri-State Generation and Transmission Ass'n, Inc.,</u> 173 F.R.D. 275 (D. Colo. 1997). <u>McConocha v. Blue Cross and Blue Shield Mut. of Ohio</u>, 930 F. Supp. 1182 (N.D. Ohio 1996); <u>Braxton v. Scott,</u> 905 F. Supp. 455 (N.D. Ohio 1995). Judgement in this case denying the Petition was entered on August 25, 2020. Under Rule 59 (e), the Petitioner's motion to reconsider had to be brought on or before September 4, 2020. The motion to reconsider was filed on September 14, 2020, twenty days after entry of judgment. It therefore fails to meet the strict standards under Rule 59 (e). The Court should summarily deny the Petitioner's motion as untimely and frivolous.

### 3. Petitioner and His Counsel Were Well Aware of the Ten-Day Deadline:

The Petitioner and his counsel were well aware of the ten-day deadline under Rule 59 (e). On September 4, 2020, during the Petitioner's counsel's Local Rule 7.1 (a) (2) conference with the Mother's counsel, the Petitioner's counsel informed the Mother's counsel that he knew that the Court's Order was entered on the docket on August 25, 2020 and that a motion to reconsider had to be filed later that day, on September 4, 2020, or it would be waived. Despite this admission by the Petitioner's counsel, the Petitioner filed his motion to reconsider on September 14, 2020, twenty days after final judgement.

### 4. Reconsideration is an Extraordinary Remedy which Should be Used Sparingly:

Even if the Petitioner had complied with the ten day deadline under Rule 59 (e), the Petitioner's motion to reconsider should be denied. The case law interpreting Rule 59 (e) is clear: reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. **Palmer v. Champion Mortg.**, 465 F.3d 24, 30 (1st Cir. 2006); **Templet v. HydroChem Inc.**, 367 F.3d 473, 479 (5th Cir. 2004); **Pacific Ins. Co. v. American Nat. Fire Ins. Co.**, 148 F.3d 396, 403 (4th Cir. 1998); **Northwest Bypass Group v. U.S. Army Corps of Engineers**, 552 F. Supp. 2d 137, 144 (D.N.H. 2008); **In In re Self**, 172 F. Supp. 2d 813, 815 (W.D. La. 2001); **U.S. v. Philip Morris Inc.**, 130 F. Supp. 2d 96, 99 (D.D.C. 2001); **Rygg v. County of Maui**, 122 F. Supp. 2d 1140, 1157 (D. Haw. 2000); **Clancy v. Employers Health Ins. Co.**, 101 F. Supp. 2d 463, 465 (E.D. La. 2000). Motions for reconsideration or re-argument must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on the same issues that have been thoroughly considered by the court. **Range Road Music, Inc. v. Music Sales Corp.**, 90 F. Supp. 2d 390 (S.D. N.Y. 2000). To avoid repetitive arguments on issues already considered fully by the court, rules governing re-argument are narrowly construed and strictly

3

applied. **St. Paul Fire and Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.,** 976 F. Supp. 198 (S.D. N.Y. 1996); **NL Industries, Inc. v. Commercial Union Ins. Co.,** 935 F. Supp. 513, 516 (D.N.J. 1996). Motions for reconsideration should be granted sparingly because of the interest in finality and conservation of scarce judicial resources. **Pennsylvania Ins. Guar. Ass'n v. Trabosh,** 812 F. Supp. 522 (E.D. Pa. 1992); **Rottmund v. Continental Assur. Co.,** 813 F. Supp. 1104 (E.D. Pa. 1992).

**5. Rule 59 (e) Does Not Permit the Petitioner to Retry the Case after Losing:**

Under Rule 59 (e), motions for reconsideration are not a vehicle for losing parties to re-litigate case, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a "second bite at the apple." **Analytical Surveys, Inc. v. Tonga Partners, L.P.,** 684 F.3d 36 (2d Cir. 2012). A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of, nor is it to be used to put forth arguments which could have been made but which the party neglected to make before judgment. **Exxon Shipping Co. v. Baker,** 554 U.S. 471, 128 S. Ct. 2605, 2617, 171 L. Ed. 2d 570 (2008). **Palmer v. Champion Mortg.,** 465 F.3d 24 (1st Cir. 2006); **Nelson v. City of Albuquerque,** 921 F.3d 925, 929 (10th Cir. 2019); **Blystone v. Horn,** 664 F.3d 397, 81 Fed. R. Serv. 3d 370 (3d Cir. 2011); **Zimmerman v. City of Oakland,** 255 F.3d 734 (9th Cir. 2001); **Waye v. First Citizen's Nat. Bank,** 846 F. Supp. 310 (M.D. Pa. 1994), judgment aff'd without opinion, 31 F.3d 1175 (3d Cir. 1994). Post-trial motions to amend a trial court's findings or make additional findings, and amend the judgment accordingly, or to open the judgment, take additional testimony, amend the findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment are not to be used when a party is merely seeking to re-litigate a finding that was made during the course of the trial. **FMD Restoration,**

Inc. v. Baistar Mechanical, Inc., 320 F.R.D. 320, 323 (D.D.C. 2017). Motions under rule providing for motions to alter or amend judgment may not be used to argue new legal theory. F.D.I.C. v. World University Inc., 978 F.2d 10 (1st Cir. 1992). Havoco of America, Ltd. v. Sumitomo Corp. of America, 971 F.2d 1332 (7th Cir. 1992). The Petitioner is not entitled to reconsideration of the Court's denial of the Verified Petition. The Petitioner's motion is nothing more than a baseless, brazen effort to retry the case, after having lost at trial.

## 6. The Petitioner's Untimely Motion is Cynically Based on Evidence He Deliberately Withheld as Part of His Gamesmanship and Bad Faith:

During discovery, the Petitioner brazenly violated the rules of expert disclosure when he deliberately failed to disclose the purported "expert report" until the night before the expert witness' deposition. As a result, the Mother sought a conference with the Court to disclose the Petitioner's misconduct. (Joint Motion for Status Conference, Docket # 22-23). On July 22, 2020, during the status conference, the Court reprimanded Petitioner's counsel for "gamesmanship" in withholding the report until the night before the witness' deposition and the close of discovery, and considered sanctions against the Petitioner. Cynically, the Petitioner now seeks to utilize the untimely "expert report" as "new evidence" under Rule 59(e) to reopen the case, after hiding the report during discovery and losing on the merits at trial. The report cannot be the basis of "newly discovered evidence" for what is clearly an untimely motion for reconsideration under Rule 59 (e). Evidence known to party and deliberately withheld for tactical reasons cannot constitute newly discovered evidence supporting motion for reconsideration. Bennett v. Saint-Gobain Corp., 507 F.3d 23 (1st Cir. 2007); Egonmwan v. Cook County Sheriff's Dept., 602 F.3d 845 (7th Cir. 2010); Obriecht v. Raemisch, 517 F.3d 489 (7th Cir. 2008). Legal theories based on expert reports, opinions or information contained within them which are available to a party prior to a hearing may not be the

basis of "new evidence" under Rule 59 (e). U.S. v. Metropolitan St. Louis Sewer Dist., 440 F.3d 930 (8th Cir. 2006); Becerra v. Asher, 921 F. Supp. 1538 (S.D. Tex. 1996), aff'd on other grounds, 105 F.3d 1042 (5th Cir. 1997); June. Javetz v. Board of Control, Grand Valley State University, 903 F. Supp. 1181 (W.D. Mich. 1995). A district court does not abuse its discretion in denying a motion to alter or amend a judgment when it is premised on evidence that the moving party had in his control prior to the original entry of judgment. Sala v. U.S., 251 F.R.D. 614 (D. Colo. 2008); Satterlee v. Allen Press, Inc., 455 F. Supp. 2d 1236 (D. Kan. 2006); Lovell v. Hamp, 228 F. Supp. 2d 773 (N.D. Miss. 2001).

**7. The Petitioner Waived any Right to Argue His New Theory By His Own Strategic Decision and His Own Misconduct:**

A motion to alter or amend a judgment is not a chance for a party to correct poor strategic choices, nor are those motions to be used by litigants to cry over spilled milk. **Mohammadi v. Islamic Republic of Iran,** 947 F. Supp. 2d 48 (D.D.C. 2013). By his own misconduct, the Petitioner waived any right to reconsideration under Rule 59 (e). The Petitioner strategically chose to withhold the expert report until the night before the deposition and the eve of the close of discovery and then to try the case with the evidence and the theories he presented. The Court bifurcated the trial on July 22, 2020 (Document # 24). On the same day, the Court issued an Amended Scheduling Order which set forth the factual and legal issues to be tried. (Document # 25). The Petitioner knew that the case was bifurcated and did not object to the bifurcation. After losing at trial, the Petitioner may not now seek to change his strategy and offer additional or different evidence, while cynically claiming that the Court made "errors of fact and law." The truth is that the Petitioner lost based on the strategic decisions he chose during litigation and the evidence he chose to present during trial. Any "errors" were made by the Petitioner and his counsel. Not by the Court.

**8. The Petitioner's Untimely Motion is in Furtherance of His Bad Faith Litigation Tactics to Weaponize the Hague Convention and Harass the Mother to Avoid Paying Child Support in Armenia:**

The facts and the law at trial conclusively established that the Petitioner never had or wanted custody of the Child and that the Verified Petition was brought as part of a coordinated effort to weaponize the Hague Convention in order to harass and intimidate the Mother and to gain leverage in the divorce action pending in Armenia. On December 7, 2019, the Petitioner visited Lala Sargsyan at her home in Armenia and arrogantly declared his intention to use the legal system in the United States to harass and punish the Mother for "disobeying him." The Petitioner told Lala Sargsyan that if the Mother *"had dared go to the United States she would regret it and that he would bring her back in chains. He said that he would punish Respondent and that he did not regret throwing her and the child out, but that he regretted not having done it a year sooner. He said that he would not provide any support for the child so that the Respondent would rub her nose on the ground."* (Findings of Fact and Conclusions of Law, Document #47, page 11-12, para 59, emphasis added). The next day, December 8, 2019 the Petitioner met with an attorney in Armenia employed by the law firm of Ara Ghazaryan and hired the firm to represent him. (Document #47, page 14, para 73). (Attorney Ara Ghazaryan, a partner at the firm of Ara Ghazaryan is the owner of the law firm (Ashkhen Dashian is an attorney employed by the firm), is the author of the "expert report" which the Respondent withheld from the Mother during discovery in this case and upon which the Petitioner now bases his current untimely motion for reconsideration). On the very same day, December 8, 2019, the Petitioner called Lala Sargsyan on the telephone and fully disclosed his scheme to use the legal system in the United States to harass and punish the Mother by making the following threat: *"Enjoy your peaceful days because [you will] would soon*

*see what [the Petitioner] would do to her daughter, her grandchild and her family. He said very cruel days were awaiting her and that he planned to drag Respondent back to Armenia, punish her and turn her life into a living hell."* (Document #47, page 12, para 60, emphasis added). Thereafter the Petitioner carried out his threat by filing a bogus claim for "wrongful removal" before this Court.

## 9. The Petitioner Coordinated a Litigation Strategy to Weaponize the Hague Convention and Harass the Mother to Avoid Paying Child Support in Armenia:

After hiring the firm of Ara Ghazaryan, despite the Mother's suggestion in December 2019 that divorce proceedings could be commenced in Armenia in her absence, Petitioner declined to commence divorce proceedings. (Document #47, page 14, para 74). Instead, on or about December 30, 2019, Petitioner submitted an Application in Accordance with the Hague Convention on the Civil Aspects of International Child Abduction, seeking the return of the Child to Armenia. (Document #47, page 14, para 75). On or about January 13, 2020, the Mother filed a divorce application in Armenia seeking child support. (Document #47, page 14, para 75). The Mother's divorce petition clearly states that "the child presently resides with the [Mother], and that the Mother solely provides for the child's needs and care." (Document #47, page 14, para 75). The Armenian judge adjudicating the divorce proceedings found that the Petitioner was aware of the divorce on March 18, 2020. (Document #47, page 14, para 77). On April 1, 2020, after retaining the law firm of Holland & Knight in the United States, the Petitioner filed the "Verified Petition for Return of Child to Armenia" in this Court. In the Verified Petition, the Petitioner did not disclose the Armenian divorce proceedings. (Document #47, page 14, para 78). On April 27, 2020, the Petitioner sought an expedited hearing in this case, but still did not disclose the divorce proceeding in Armenia. (Document #47, page 15, para 80). When he filed the Verified Petition, the Petitioner knew

8

that the Mother had already filed for divorce in Armenia and had submitted herself to its jurisdiction. (Document #47, page 14, para 77). He knew that the Mother was only in the United States "for a holiday" to visit her brother and that she would be returning. (Document #47, page 11-12, para 58-61; page 13, para 64). The Petitioner also knew that the Mother had limited financial resources and would suffer financial hardship trying to defend herself from a lawsuit in the United States. With this knowledge, the Petitioner found a law firm in the United States willing to do his bidding for free. Relying on law firms of Holland & Knight in the United States, and Ara Ghazaryan, in Armenia, the Petitioner orchestrated a litigation strategy to use the legal system in the United States in bad faith in order to carry out his avowed plan to "***drag [the Mother] back to Armenia in chains, punish her and turn her life into a living hell.***" This was done to harass and pressure the Mother into giving up her claim for child support in Armenia. This coordinated strategy was beneficial to both the Petitioner and to his pro bono lawyers in the United States: the Petitioner got free, aggressive legal representation and the virtually unlimited legal resources of a major law firm in the United States, and the law firm got to use the Petitioner's case to train some of its junior lawyers in trial practice in Federal District Court. (Evidently, Holland & Knight takes on pro bono cases to file in Federal District Court as part of its trial training of its junior lawyers). This arrangement was mutually beneficial for both the Petitioner and his pro bono lawyers, and cost them nothing. Unfortunately, it cost the Mother tens of thousands of dollars in legal fees and months of sleepless nights resulting from undeserved harassment. The Petitioner's motion to reconsider is part and parcel of the Petitioner's scheme. The motion should be denied. The Court should sanction the Petitioner and award the Mother her legal fees, expenses and costs.

**WHEREFORE,** the Respondent, moves that the Court deny the Petitioner's motion to reconsider and award her attorneys' fees and costs.

Lilit Sargsyan,

By Her Attorneys,

/s/Harry M. Haytayan, Jr.
Harry M. Haytayan, Jr.
B.B.O. #548946
Haytayan & Haytayan, PLLC
303 Wyman Street, Suite 300
Waltham, Massachusetts 02451
Tel. No. 617-833-2443
harry@haytayanlaw.com
**FIRM MAILING ADDRESS**
Haytayan & Haytayan, PLLC
One Tara Boulevard, Suite 200
Nashua, New Hampshire 03062
Tel. No. 603-921-1336

## Certificate of Service

I hereby certify that on September 25, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Massachusetts by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

/s/Harry M. Haytayan, Jr.
Harry M. Haytayan Jr.